(5 App. Div. 164.)

PEOPLE ex rel. CARROLL v. NEW YORK CITY CIVIL SERVICE BOARD et al.

(Supreme Court, Appellate Division, First Department.   May 8, 1896.)

1. OFFICE AND OFFICER—APPOINTMENT UNDER CIVIL SERVICE LAW.
    Const. 1895, art. 5, § 9, provides that all appointments in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness, to be ascertained by competitive examinations, etc.   *Held*, that where, after such constitution took effect, the position of bridge tender in the city of New York was transferred from the schedule in which it was then classified to another schedule, a vacancy afterwards occurring in such position should have been filled by appointment of a person examined according to the rules of the civil service board as applicable to the latter schedule, and not the former, and this though a list examined under the old schedule, before such constitution took effect, existed at the time of the appointment.

2. SAME.
    The fact that it had been the practice of the board, when a position was transferred from one schedule to another, to make no appointments for the position in the new schedule until all the persons who were on the eligible list for such position on the old schedule had been appointed, did not justify such board in making an appointment according to such practice, in the absence of any rule or official action of the board on the subject.

Appeal from special term, New York county.

Mandamus proceedings by the people of the state of New York, on the relation of Frank J. Carroll, against the New York City civil service board and others, to compel such board to appoint relator to the position of bridge tender in such city. From an order granting a peremptory writ, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Theodore Connoly, for appellants.
George Malraison, for respondent.

INGRAHAM, J. On the 1st day of January, 1895, the constitution adopted by the people in November, 1894, was in force, and by article 5, § 9, it was provided that "appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations which, so far as practicable, shall be competitive; provided however that honorably discharged soldiers and sailors from the army and navy of the United States in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made." And in the case of People v. Roberts, 148 N. Y. 360, 42 N. E. 1082, it was held that in adopting the new constitution the people, in their original capacity, decreed that thereafter all the departments of the government should be brought within the operation of existing laws on the subject of appointments; that it was the intention to put all the new provisions of the constitution into operation through the instrumentality of such laws as were then in force, so far as practicable. It appears from the papers upon which this order for a mandamus was granted that, at the time this constitutional provision came into effect, the position of bridge tender was classified by the New York City civil service board in Schedule F. It does not appear whether the offices classified in Schedule F were to be filled by competitive or noncompetitive examinations. The only statement in relation to Schedule F is that the examination for Schedule F was and is the regular examination by the board of examiners for mental capacity, and also, at the option of respondents, a physical examination, but that for Schedule G the examination is merely a medical one, to ascertain the physical qualifications of the candidates, supplemented by such recommendation or information as may throw light upon their qualifications for the position sought. It further appeared that on November 1, 1895, an examination was held for the position of bridge tender, which was at that time in Schedule F of the classification of the above-mentioned board; that at such examination a number of persons passed the same, and were placed upon Schedule F, and an eligible list was prepared therefrom on November 4, 1895. It further appears that on November 7, 1895, the civil service board recommended to the mayor that the position of bridge tender be transferred from Sched-

ule F to Schedule G, and that such recommendation was duly approved by the mayor.    It seems to us quite clear that, after this position of bridge tender had been classified under Schedule G, all positions of bridge tenders that became vacant after such classification were to be filled after an examination provided for by the rules of the civil service board as applicable to Schedule G, and not to Schedule F.    The mere fact that a list under the old examination, which was no longer applicable to condidates for this position, had been prepared therefrom, was not sufficient to justify the civil service board, or their subordinates, in certifying to the appointing power a candidate for such appointment without a further examination as provided for by the civil service rules for applicants under Schedule G. Appointments to positions subsequently becoming vacant were then to be made from an eligible list prepared after examinations under the rules relating to Schedule G; and as this relator had passed such an examination, and had been placed upon Schedule G, he became eligible for an appointment, in case a vacancy for a position as bridge tender existed.    The provisions of section 9 of article 5 of the constitution, before mentioned, then applied; and this relator became entitled to a preference in appointment, without regard to his standing on any list from which such appointment or promotion could be made.    This is recognized by rule 71 of the city civil service regulations, which provide that in making such certification the labor clerk shall certify, in the order of registration, veterans with families dependent upon them for support.    The relator shows that he is a veteran with a family dependent upon him for support.    It further appears that there is no other applicant for this position who is a veteran with a family dependent upon him for support. It follows, we think, that, upon receiving a requisition from the department of public parks for the names of persons to be employed as bridge tenders, this relator was entitled to have his name certified by the labor clerk to such department.

The appellants stated in their answering affidavits that it has been the practice of the board, when a position is transferred from one schedule to another, to make no appointment for the position in the new schedule until all the persons who are on the eligible list for such position from the old schedule had been appointed; but it is not alleged that any rule has been made by the board upon that subject, nor that any official action has been taken upon this question, the secretary simply swearing that it has been the practice. While we are prepared to give full force and effect to all rules made by the civil service board in the discharge of their duties, we do not think that a mere practice, unsanctioned by any express resolution of the board, or rule made by the board, should have the force and effect of such a rule or resolution.    There is nothing in the papers to show that the board itself has deliberately passed upon this question, or that it expressly directed the labor clerk to certify from the old list of Schedule F, instead of from the eligible list under Schedule G, within which this position is now classified.    We think, therefore, that the court below was right in awarding a mandamus, and that the order appealed from should be affirmed.

Objection is made to the amount of costs awarded by the court below. We are not disposed to interfere in this case with the discretion exercised by the court in the award of costs, but, in view of the amount awarded, we will affirm this order without costs. All concur.